**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAUL RAMOS,<br><br>Plaintiff,<br><br>v.<br><br>STANDARD INSURANCE COMPANY and G&W ELECTRIC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26-cv-01477<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Raul Ramos, a former employee of Defendant G&W Electric ("G&W"), ceased working for G&W in October 2023 owing to significant medical conditions. Mr. Ramos alleges that his conditions entitle him to Short-Term Disability and Long-Term Disability coverage under his former employee welfare benefit plans administrated by Defendant Standard Insurance Company ("Standard Insurance") and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. Mr. Ramos did not apply for benefits until August 2025, nearly two years after he ceased working for G&W. Under the terms of the two benefit plans, Mr. Ramos's late filing date would render him ineligible for coverage. However, Mr. Ramos alleges that he is nevertheless entitled to benefits because Standard Insurance breached a fiduciary duty to inform Mr. Ramos of his eligibility for the plans when he retired from G&E.

Standard Insurance has moved to dismiss Mr. Ramos's amended complaint for failure to state a claim. It primarily argues that the plain language used in the insurance policies excludes Mr. Ramos from coverage, and that it did not breach any fiduciary duty owed to Mr. Ramos. From the face of Mr. Ramos's amended complaint, he clearly did not file for benefits within the time limits prescribed by the plan policies. As such, he is not entitled to legal relief under ERISA. However, Mr. Ramos's

amended complaint supports a plausible inference that Standard Insurance had a fiduciary duty to inform him about his eligibility for the benefit plans but failed to do so. If so, then Mr. Ramos is entitled to equitable relief. As such, the Court grants in part and denies in part the motion to dismiss.

## BACKGROUND

### Facts

Unless otherwise noted, the following facts are drawn from Mr. Ramos's amended complaint, dkt. 35 [hereinafter Am. Compl.], and are assumed true for the purpose of resolving this motion.

Plaintiff Raul Ramos is a former machine operator for Defendant G&W Electric. His employment with G&W made him a participating member for a Short-Term Disability Income Benefit Program (the "Short-Term Plan") and a Group Long-Term Disability Insurance Plan (the "Long-Term Plan") (together, the "Plans"). The Plans are both administrated by Defendant Standard Insurance. However, Standard Insurance only pays out benefits on the Long-Term Plan; responsibility for paying benefits under the Short-Term Plan falls to G&W.

On or about October 17, 2023, Mr. Ramos retired from G&W due to several medical conditions, including gout, tendinopathy of the right bicep, polyarthralgia, pain in the right lower leg, osteoarthritis in the right ankle and foot, right toe pain, and asthma. He alleges that these conditions, and the accompanying reduction in his work capacity, make him eligible for benefits under the Plans. However, at the time of his retirement, Mr. Ramos did not know of his eligibility. He instead believed that his condition would be addressed solely through worker's compensation. After learning of his potential Plan eligibility, Mr. Ramos submitted applications for benefits on August 21, 2025, nearly two years after his retirement.

The language of both plans contains sharp cut-off deadlines for eligibility. The Short-Term Plan specifies that, after a waiting period of five working days, proof of loss should be submitted within ninety days if possible and no more than a year after the ninety-day period. Dkt. 1-1 at *15–

16.[1] The Long-Term Plan uses the same deadline, except that the initial waiting period in 180 days, rather than five. Dkt. 1-2 at *8, 28. In both cases, the Plan policies require strict adherence: unless the applicant suffered a loss of capacity, "If Proof Of Loss is filed outside these time limits, your claim will be denied." Dkt. 1-1 at *16; dkt. 1-2 at *28.

**Procedural History**

Mr. Ramos filed his initial complaint on February 9, 2026, after Standard Insurance failed to issue a decision with respect to his application for benefits. Dkt. 1. On April 27, 2026, Standard Insurance filed the instant motion to dismiss. Dkt. 12. Mr. Ramos then amended his complaint without opposition. Dkt. 26; *see* Am. Compl. The parties agreed that the amendment did not moot the pending motion to dismiss, *see* dkt. 29, so the Court entered a new briefing schedule. Both parties timely filed their respective response and reply briefs, after which the Court took the matter under advisement.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. See *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare

[1] All citations to docketed filings refer to the page number of the overall pdf file.

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Claims Filing Period and Fiduciary Duties

#### *A. Legal Relief*

Mr. Ramos argues that he is entitled to benefits under ERISA's civil enforcement provision, 29 U.S.C. §1132(a)(1)(B). That provision allows a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* The Supreme Court has repeatedly emphasized that Courts should construe the terms of an ERISA plan strictly. *See, e.g., Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan.")

Here, Standard Insurance does not contest whether Mr. Ramos's alleged ailments at the time of his retirement qualified him for benefits under the Plans. Instead, it claims that his application was untimely. Standard Insurance argues that Mr. Ramos's amended complaint and the terms of the Plans (attached to his initial complaint, *see* dkt. 1-1, 1-2) establish that the absolute deadlines to apply for his benefits were January 20, 2024 (for the Short-Term Plan) and April 14, 2024 (for the Long-Term Plan). Dkt. 13 at *4 [hereinafter MOL]. Mr. Ramos does not dispute Standard Insurance's calculations of the deadlines produced by strict interpretation of the Plans' respective policies. *See generally* dkt. 27 [hereinafter Resp.]. He also does not argue that he lacked capacity, or that any other tolling provision within the plan should have extended his filing deadline. It is therefore clear under strict construction of the terms of the Plan policies that Mr. Ramos' benefits application was untimely. The Court therefore grants the motion to dismiss with respect to any claim for legal relief under ERISA.

B. *Equitable Relief*

However, that is not the end of the analysis. While Mr. Ramos does not appear to seriously contest that his application was untimely under the terms of the Benefit Plan policies, he argues that he is entitled to equitable relief because Standard Insurance breached its fiduciary duty by failing to inform him about his eligibility for the plans.[2] If eventually established, a breach of fiduciary duty by Standard Insurance (and/or G&W) would entitle Mr. Ramos to appropriate equitable relief. *See* 29 U.S.C. § 1109; *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209–10 (2002).

"A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) (citing *Kannapien v. Quaker Oats Co.,* 507 F.3d 629, 639 (7th Cir. 2007)). Here, the first and third elements are easily satisfied. As plan administrator, Standard Insurance is certainly a fiduciary. *See* 29 U.S.C. § 1002(21)(A) (ERISA fiduciaries include those who "exercise[] any discretionary authority or discretionary control respecting management of" a benefit plan"). And, if Standard Insurance did breach its duty toward Mr. Ramos, then that breach certainly harmed him by causing him to miss his filing deadline and consequently lose eligibility for potentially upward of a hundred thousand dollars in benefits. The only real issue, then, is whether Mr. Ramos has sufficiently alleged a breach of duty.

"The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA." *Eddy v. Colonial Life Ins. Co. of Am.,*

---

[2] Mr. Ramos does not specifically allege a breach of fiduciary duty in his complaint. *See generally* Am. Compl. Although "It is well established that a plaintiff cannot amend the complaint through a response brief," *Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)), a plaintiff may also advance arguments and claims in a response brief that are only implicit in the complaint, so long as the complaint contains sufficient allegations to render such claims plausible, *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555–56 (7th Cir. 2012) (a plaintiff "may elaborate on her allegations [in a brief] so long as the elaborations are consistent with the pleading"). Here, the Court finds that Mr. Ramos's breach of fiduciary duty arguments in his response brief are consistent with his amended complaint.

919 F.2d 747, 750 (D.C. Cir. 1990). This duty obligates fiduciaries, in certain circumstances, to affirmatively communicate material facts affecting the interests of beneficiaries. *Id.*; *Kenseth*, 610 F.3d at 466. As the Eight Circuit has put it (in a quotation cited with approval by the *Kenseth* panel), "a fiduciary has a duty to inform when it knows that silence may be harmful and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits." *Kalda v. Sioux Valley Physician Partners, Inc.,* 481 F.3d 639, 644 (8th Cir. 2007) (citations ommiteed); *accord Bixler v. Cent. Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir. 1993) ("Th[e] duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform but also an affirmative duty to inform when the trustee knows that silence might be harmful. In addition, the duty recognizes the disparity of training and knowledge that potentially exists between a lay beneficiary and a trained fiduciary. Thus, while the beneficiary may, at times, bear a burden of informing the fiduciary of her material circumstance, the fiduciary's obligations will not be excused merely because [the beneficiary] failed to comprehend or ask about a technical aspect of the plan."). But a fiduciary's duty also does not extend beyond reason. "ERISA does not require plan administrators to investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees." *Chojnacki v. Georgia-Pac. Corp.*, 108 F.3d 810, 817–18 (7th Cir. 1997).

Putting the Seventh Circuit's precedents together, the Court understands the critical question in this case to be whether Standard Insurance *knew or should have known* that Mr. Ramos was eligible (or potentially eligible) for benefits. If so, then Standard Insurance likely had a fiduciary duty to inform Mr. Ramos about his potential eligibility and the deadlines for applying for benefits. This is particularly so, given that Mr. Ramos was a laborer, rather than an office worker, who alleges that he "is not sophisticated in insurance or employee benefits matter[s]." Am. Compl. ¶¶ 9, 17; *see Bixler,* 12 F.3d at 1300. There is also a possibility that a language barrier may exist. However, if Standard Insurance did

not have any reason to suspect that Mr. Ramos with retiring with qualifying injuries, then it likely did not have any fiduciary duty to inform Mr. Ramos about his eligibility.

Mr. Ramos's amended complaint does not provide a definitive allegation that Standard Insurance knew or should have known about his conditions and retirement. However, on a motion to dismiss, a court must draw all reasonable inferences in the favor of the plaintiff. *Trujillo*, 926 F.3d at 397. Here, the allegations provide a reasonable basis for drawing the inference that Standard Insurance had such knowledge. Most prominently, Mr. Ramos alleges that he expected that "his condition would be addressed solely through worker's compensation." Am. Compl. ¶ 18. Mr. Ramos also argues that his ailments stemmed from a specific workplace injury, but that Standard failed to provide him with any claim forms, etc. *Id.* ¶ 17; Resp. *2. If Mr. Ramos received worker's compensation, then, at a minimum, G&W must have known about Mr. Ramos's ailments. The amended complaint does not state whether Standard Insurance administrated G&W's worker's compensation fund, but if so, then Standard Insurance would have known about Mr. Ramos's condition. Even if not, it is reasonable to assume that G&W informed Standard Insurance about Mr. Ramos. Among other reasons, G&W is the entity that pays out benefits under the Short-Term Plan, dkt. 1-1 at *2, 5; *see* MOL *6–7. It is reasonable to assume that G&W is in regular communication with Standard Insurance (the administrator of the Short-Term Plan) about its actual and potential financial obligations under the Short-Term Plan.

As such, while concrete proof is lacking, Mr. Ramos's allegations provide more than a "mere possibility" that Standard Insurance breached its fiduciary duty to Mr. Ramos. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Additionally, the question of what Standard Insurance knew and when is an issue of Standard Insurance's state of mind that is not usually appropriate to resolve on a motion to dismiss. *See Air Line Pilots Ass'n, Intern. V. Dept. of Aviation of City of Chicago*, 45 F.3d 1144, 1154 (7th Cir. 1995) (defendant's intent was an inherently factual issue "that should not be resolved

on a motion to dismiss"). Here, Mr. Ramos's allegations establish that it is reasonable to infer that Standard Insurance knew or should have known about his eligibility for benefits at the time of his retirement, and thus that Standard Insurance should have taken affirmative steps to "communicate material facts affecting" Mr. Ramos's interests as a beneficiary. *Kenseth*, 610 F.3d at 466. Because it is reasonable to make such an inference, the Court at this stage *must* make such an inference. *Trujillo*, 926 F.3d at 397. The Court therefore concludes that Mr. Ramos has plausibly alleged that Standard Insurance breached its fiduciary duty, entitling him to equitable relief.

## III. Payer of Benefits

Finally, Standard Insurance also argues that it cannot be held liable under any circumstances for Mr. Ramos's benefits under the Short-Term Plan because only G&W is obligated to pay out benefits under that plan. (Standard Insurance does not dispute that it is the payer of benefits for the Long-Term Plan.) Under Seventh Circuit precedent, "a cause of action for benefits due must be brought against the party having the obligation to pay the benefits." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013) (quotation marks omitted). However, the question of whether Mr. Ramos is entitled to *legal* relief under the Short-Term Plan (which the Court has already resolved in the negative) has no bearing on the question of whether Standard Insurance breached its fiduciary duty as the administrator of the Short-Term Plan. It would be premature at this point to dismiss any such claims for equitable relief against Standard Insurance.

## CONCLUSION

Defendant's motion to dismiss [12] is granted in part and denied in part. The Court dismisses all claims by Mr. Ramos for legal relief under ERISA against Standard Insurance. However, all claims for equitable relief under ERISA against Standard Insurance may proceed.

**IT IS SO ORDERED.**

Date: 11/3/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge